**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-861-WJM-KLM

MIKE BOULTER,
BOULTER, LLC,
RALPH NIX PRODUCE, INC., and
BARCLAY FARMS, LLC, on behalf of themselves and classes of similarly situated persons,

    Plaintiffs,

v.

NOBLE ENERGY, INC., and
KERR-MCGEE OIL & GAS ONSHORE, LP,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court are: (1) Defendant Noble Energy, Inc.'s ("Noble") Motion to Dismiss ("Noble Motion") (ECF No. 23); and (2) Defendant Kerr-McGee Oil & Gas Onshore, LP's ("KMOG") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and, In the Alternative, Motion to Stay Proceedings ("KMOG Motion") (ECF No. 24).[1] Plaintiffs Mike Boulter; Boulter, LLC; Ralph Nix Produce, Inc. ("Ralph Nix Produce"); and Barclay Farms, LLC ("Barclay Farms") (collectively, "Plaintiffs") filed responses. (ECF Nos. 28, 29.) Noble and KMOG filed replies. (ECF Nos. 31, 32.) For the following reasons, the Noble Motion and the KMOG Motion are granted.

---

[1] The Court refers to Noble and KMOG jointly as "Defendants."

# I. BACKGROUND[2]

On April 10, 2020, Plaintiffs, a group of royalty owners, filed the Complaint (ECF No. 7), alleging on behalf of themselves and three purported classes, that Noble and KMOG have underpaid oil royalties under several decades-old oil and gas leases in Colorado. Plaintiffs allege the Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). (*Id.* ¶ 2.) Different Plaintiffs bring claims against Noble and KMOG, as follows.

## A. Claims Against Noble

Mike Boulter and Boulter, LLC are lessors under lease agreements in which Noble is the lessee. (ECF No. 7 ¶¶ 11–15.) Each lease agreement has an identical oil royalty provision:

> To deliver to the credit of the lessor, free of cost, in the pipe line to which the lessee may connect his wells, the equal [a specified percentage] part of all oil produced and saved from the leased premises, as royalty or, at lessee's election, to pay the lessor for such royalty the market price prevailing the day the oil is run into the pipe line, or in storage tanks.

(*Id.* ¶ 15.)

Since April 1, 2014, Noble has allegedly consistently deducted from the market price of the oil various costs related to transporting the oil from the well to a transportation pipeline, tariff costs within the transportation pipeline, and various self-described "other costs" related to transporting the oil to a delivery point where the oil has been sold to third parties for a market price. (*Id.* ¶ 16.) Mike Boulter and Boulter,

---

[2] The Background is drawn from the First Amended Class Action Complaint ("Complaint") (ECF No. 7). The Court assumes the allegations contained in the Complaint to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

LLC claim that Noble has materially breached its royalty payment obligations by deducting these post-production costs from the market price of the oil in the calculation of royalties paid to them and the Noble Class,[3] causing them damages. (*Id.* ¶¶ 18–19, 22–23.) Based on these allegations, Mike Boulter and Boulter, LLC, on behalf of the Noble Class bring two claims against Noble: breach of contract (*id.* ¶¶ 31–34) and declaratory judgment (*id.* ¶¶ 35–37).

## B. Claims Against KMOG

### 1. Mike Boulter and Ralph Nix Produce's Claims

The allegations against KMOG are similar. Mike Boulter and Ralph Nix Produce are lessors under lease agreements in which KMOG is the lessee. (*Id.* ¶¶ 44, 47.) Each lease agreement has an identical oil royalty provision:

> To deliver to the credit of the lessor, free of cost, in the pipe line to which Lessee may connect wells on said land the equal one-eighth (1/8) part of all oil produced and saved from the leased premises.

(*Id.* ¶¶ 45, 48.)

Since April 1, 2014, KMOG has allegedly consistently deducted from the sales price of the oil, various costs related to transporting the oil from the well to a transportation pipeline and various self-described "other costs" related to transporting

---

[3] The "Noble Class" is defined as: "All persons to whom Noble has paid royalties on oil produced from wells located in the State of Colorado since April 1, 2014, pursuant to leases or overriding royalty agreements which require Noble to '. . . deliver to the credit of the lessor, free of cost, in the pipe line to which the lessee may connect his wells, the equal [a specified percentage] part of all oil produced and saved from the leased premises, as royalty or, at lessee's election [or option], to pay the lessor for such royalty the market price prevailing the day the oil is run into the pipe line, or in storage tanks.'

The Noble Class excludes: (a) the United States; (b) any person who has been a working interest owner in a well located in Colorado on whose behalf Noble has paid royalties on oil or natural gas produced by Noble in Colorado since April 1, 2014; and (c) Noble and its affiliated entities, and their respective employees, officers, and directors." (ECF No. 7 at 1–2.)

3

the oil to a delivery point where the oil has been sold to third parties for a sales price. (*Id.* ¶ 49.)  The costs which KMOG allegedly improperly deducted from the selling price (equivalent to the market price) of the oil include costs which KMOG describes as gathering, transportation, and other deductions.  (*Id.* ¶ 50.)  Mike Boulter and Ralph Nix Produce allege that the deduction of these costs is not permitted under the royalty provision, and KMOG has materially breached its contractual obligations to them and Kerr-McGee Subclass I[4] under the leases by taking such deductions, causing them damages.  (*Id.* ¶¶ 51–52, 55–56.)  Based on these allegations, Mike Boulter and Ralph Nix Produce, on behalf of the Kerr-McGee Subclass I, bring two claims against KMOG: breach of contract (*id.* ¶¶ 64–67) and declaratory judgment (*id.* ¶¶ 68–70).

    2.    <u>Barclay Farms's Claims</u>

Barclay Farms is a lessor under a lease agreement in which KMOG is the lessee. (*Id.* ¶ 77.)[5]  The lease agreement contains the following royalty provision:

> The lessee shall deliver to lessor as royalty, free of cost, on the lease, or into the pipe line to which lessee may connect its wells the equal one-eighth part of all oil produced and saved from the leased premises, or at the lessee's option

---

[4] The "Kerr-McGee Subclass I" is defined as: "All persons to whom Kerr-McGee has paid royalties on oil produced from wells located in the State of Colorado since April 1, 2014, pursuant to leases or overriding royalty agreements which require Kerr-McGee to '. . . deliver to the credit of lessor, free of cost, in the pipe line to which lessee may connect [his] wells on said land, the equal [a specified percentage] part of all oil produced and saved from the leased premises.'

The Kerr-McGee Subclass I excludes: (a) the United States; (b) any person who has been a working interest owner in a well located in Colorado on whose behalf Kerr-McGee has paid royalties on oil or natural gas produced by Kerr-McGee in Colorado since April 1, 2014; and (c) Kerr-McGee and its affiliated entities, and their respective employees, officers, and directors."  (ECF No. 7 at 2.)

[5] Paragraphs 77 and 78 appear to contain inconsistent statements regarding when KMOG acquired its interest in the February 5, 1970 lease.  (*See* ECF No. 7 ¶¶ 77–78.) However, the inconsistency is not relevant to the resolution of the pending motions to dismiss.

4

> may pay to the lessor for such one eighth royalty the market
> price for oil of like grade and gravity prevailing on the day
> such oil is run into the pipe line or into storage tanks.

(*Id.* ¶ 79.) Since April 1, 2014, KMOG, in its calculation of royalties paid to Barclay Farms on oil sales subject to the lease agreement, has consistently deducted from the market price of the oil various costs related to transporting the oil from the well to a transportation pipeline and various self-described "other costs" related to transporting the oil to a delivery point where the oil has been sold to third parties for a market price. (*Id.* ¶ 80.) The costs which KMOG allegedly improperly deducted from the market price of the oil include, but are not limited to, costs which KMOG describes as gathering, transportation, and other deductions. (*Id.* ¶ 81.) Barclay Farms alleges that the deduction of these costs is not permitted under the royalty provision, and KMOG has materially breached its contractual obligations to it and Kerr-McGee Subclass II[6] under the leases by taking such deductions, causing them damages. (*Id.* ¶¶ 82–83, 86–87.) Based on these allegations, Barclay Farms, on behalf of the Kerr-McGee Subclass II, brings two claims against KMOG: breach of contract (*id.* ¶¶ 95–98) and declaratory judgment (*id.* ¶¶ 99–101).

---

[6] The "Kerr-McGee Subclass II" is defined as: "All persons to whom Kerr-McGee has paid royalties on oil produced from wells located in the State of Colorado since April 1, 2014, pursuant to leases or overriding royalty agreements which require Kerr-McGee to '. . . deliver to the lessor as royalty, free of cost, on the lease, or into the pipeline to which lessee may connect its wells the equal [a specified percentage] part of all oil produced and saved from the leased premises, or at lessee's option [or election] may pay to the lessor for such [a specified percentage] royalty the market price for oil of like grade and gravity prevailing on the day such oil is run into the pipe line or into storage tanks.'

The Kerr-McGee Subclass II excludes: (a) the United States; (b) any person who has been a working interest owner in a well located in Colorado on whose behalf Kerr-McGee has paid royalties on oil or natural gas produced by Kerr-McGee in Colorado since April 1, 2014; and (c) Kerr-McGee and its affiliated entities, and their respective employees, officers, and directors." (ECF No. 7 at 2–3.)

.
.

## II. LEGAL STANDARD

**A.      Federal Rule of Civil Procedure 12(b)(1)**

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts must be construed strictly.  *See F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  A Rule 12(b)(1) motion may take one of two forms: a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  Conversely, when reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  *See id.*  A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  *See id.*

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

6

claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk*, 493 F.3d at 1177. Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. COLORADO'S OIL AND GAS CONSERVATION ACT

Colorado's Oil and Gas Conservation Act, §§ 34-60-101 *et seq.* (the "Act"),

expressly grants jurisdiction to the Colorado Oil and Gas Conservation Commission ("COGCC") to determine "[t]he amount of the proceeds plus interest, if any, due a payee by a payer" from the sale of oil and gas from Colorado wells.  Colo. Rev. Stat. § 34-60-118.5(5)(c).

The one exception to the COGCC's jurisdiction over a proceeds dispute is when there is a "bona fide dispute over the interpretation of a contract for payment."  *Id.* § 34-60-118.5(5).  Thus, the COGCC is precluded from exercising jurisdiction over any controversy involving a bona fide dispute regarding contract interpretation.  *Id.*

However, the Act provides that the COGCC determines in the first instance whether such a bona fide dispute exists:

> Before hearing the merits of any proceeding regarding payment of proceeds pursuant to this section, the oil and gas conservation commission shall determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payor and payee.  If the commission finds that such a dispute exists, the commission shall decline jurisdiction over the dispute and the parties may seek resolution of the matter in district court.

*Id.* § 34-60-118.5(5.5).

## IV. ANALYSIS

### A.   Parties' Arguments

Defendants argue that Plaintiffs' claims fall within the scope of the Act and that it is the COGCC's responsibility—not the Court's—to determine in the first instance whether a bona fide dispute over the interpretation of a contract between the payer and the payee exists. (ECF No. 23 at 4; ECF No. 24 at 2–3.)  By filing this lawsuit in federal court without first bringing their case before the COGCC, Defendants contend that Plaintiffs have failed to exhaust their administrative remedies.  In any event, Defendants

argue that no bona fide dispute exists here, such that the COGCC has jurisdiction to decide this case. (ECF No. 23 at 2; ECF No. 24 at 2.)

In response, Plaintiffs argue that Defendants ignore certain pertinent cases relating to the COGCC's jurisdiction. For example, Plaintiffs argue that Defendants ignore *Grynberg v. Colorado Oil and Gas Conservation Commission*, 7 P.3d 1060 (Colo. App. 1999), which they contend holds that the COGCC does not have jurisdiction to decide contractual disputes involving a producer's deduction of post-production costs, and that royalty owners who have such a contract dispute are not required to exhaust their administrative remedies with the COGCC. (ECF No. 28 at 2, 4–7.)

In addition, Plaintiffs state that Defendants ignore binding Tenth Circuit precedent, *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000), which Plaintiffs assert stands for the propositions that the Colorado legislature clarified the Act to exclude the resolution of contractual disputes from the COGCC's jurisdiction, and that a Colorado litigant alleging breach of an oil and gas royalty agreement "must assert his claim in a court of law." (ECF No. 28 at 2, 7–10.)

Finally, Plaintiffs contend that Defendants ignore the fact that the COGCC has repeatedly determined that it lacks jurisdiction under the Act to decide royalty owners' claims for breach of contract based upon an oil and gas producer's deduction of post-production costs in the calculation of royalties. (ECF No. 28 at 2, 10–11.) According to Plaintiffs, there is a bona fide dispute over the interpretation of the royalty provisions at issue, so the COGCC lacks jurisdiction, and it would therefore be futile for them to present their case to the COGCC. (*Id.* at 11–13.)

**B.    Plaintiffs Have Failed to Exhaust Administrative Remedies**

The Court finds that Plaintiffs have failed to exhaust their administrative remedies

9

based on: (1) the clear language of the Act providing that the COGCC determines whether a bona fide dispute exists which divests it of jurisdiction; and (2) Plaintiffs have not demonstrated it would be futile to bring their case before the COGCC. As a result, the Court lacks subject-matter jurisdiction over this lawsuit.

      1.      <u>The COGCC Has Jurisdiction to Determine Whether a Bona Fide Dispute Exists</u>

Under Colorado law, "[i]f complete, adequate, and speedy administrative remedies are available, a party must pursue these remedies before filing suit in district court." *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000) (citations omitted). Failure to exhaust administrative remedies before seeking judicial relief is a jurisdictional defect. *See Burlington Res. Oil & Gas Co. v. Colo. Oil & Gas Conservation Comm'n Dep't of Nat. Res.*, 986 F. Supp. 1351, 1354 (D. Colo. 1997) (citing *Kendal v. Cason*, 791 P.2d 1227, 1228 (Colo. App. 1990)).

Here, the statutory language of the Act could not be clearer. Under the Act, the COGCC "*shall* determine whether a bona fide dispute exists regarding the interpretation of a contract defining the rights and obligations of the payor and payee." Colo. Rev. Stat. § 34-60-118.5(5.5) (emphasis added). Only in the event that the COGCC finds that such a dispute exists does it decline jurisdiction. At that point, "the parties may seek resolution of the matter in district court." *Id.* Therefore, it is clear that the COGCC has jurisdiction to determine in the first instance whether there is a bona fide dispute.

      2.      <u>Plaintiffs Have Not Demonstrated Futility</u>

The doctrine of exhaustion of administrative remedies is subject to limited exceptions. *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998), *as modified on denial of reh'g* (June 22, 1998). Relevant here, an "exception applies when

it is 'clear beyond a reasonable doubt' that further administrative review by the agency would be futile because the agency will not provide the relief requested." *Id.* (quoting *Colorado v. Veterans Admin.*, 430 F. Supp. 551, 558 (D. Colo. 1977)); (*see* ECF No. 28 at 10; ECF No. 29 at 11). "If the agency refuses to reconsider its decisions or procedures, or has stated a categorical rule to apply in a group a cases, rendering exhaustion futile, requiring the protesting party to pursue administrative remedies would not further such interests as allowing the agency to correct its own errors and to develop a record for judicial review." *United Air Lines, Inc.*, 8 P.3d at 1213.

Plaintiffs' contention that it is "clear beyond a reasonable doubt that the [COGCC] would not exercise jurisdiction over [their] royalty underpayment claims" is unavailing. (ECF No. 28 at 10; ECF No. 29 at 10.)

        a.    *The Parties Dispute Whether a Bona Fide Dispute Exists*

As an initial matter, the Court notes that the parties dispute *whether* there is a bona fide dispute regarding the interpretation of a contract. Plaintiffs argue there is a dispute regarding Defendants' right to deduct post-production costs in its calculation of royalties paid to the Plaintiffs under the lease agreements at issue. (ECF No. 28 at 11–12; ECF No. 29 at 12–13.)

By contrast, Noble argues that "it is established law that where royalties are paid under a provision like the one at issue—providing for delivery of oil 'in the pipeline to which lessee may connect wells'—post-wellhead costs of transporting and treating the oil are borne by both the operator and royalty owners." (ECF No. 31 at 5 (citing 3 Williams & Meyers, *Oil and Gas Law* § 646.2).) According to Noble, the generally accepted meaning of the lease's language removes any ambiguity concerning Noble's right to deduct the post-production costs at issue. (*Id.*)

11

Like Noble, KMOG contends that there is no bona fide dispute here, pointing to the failure of the Amended Complaint to identify either the "specific deductions Plaintiffs allege were wrongful, nor the clause, phrase, or term of the royalty provisions that requires further interpretation related to any specific deductions." (ECF No. 32 at 1–2.) KMOG emphasizes that the Amended Complaint only states that "some unidentified costs should not have been deducted" and "does nothing but seek an accounting of the 'amount of the proceeds plus interest, if any, due.'" (*Id.* at 2.) In sum, KMOG argues that it is "not enough, however, for Plaintiffs to merely state that there is a contract interpretation at issue . . . ." (*Id.* at 1.)

To resolve the disagreement between the parties on this point would require the Court to invade the province of the COGCC. *See* Colo. Rev. Stat. § 34-60-118.5(5.5). This the Court will not do.

### b.   *The Case Law Does Not Support Plaintiffs' Position*

To support their argument that it is clear beyond a reasonable doubt that the COGCC would not exercise jurisdiction over Plaintiffs' claims against Defendants, Plaintiffs rely on certain cases which the Court finds do not support their position.[7]

First, Plaintiffs rely primarily on the Colorado Court of Appeals' decision in *Grynberg* and its progeny to demonstrate futility. In *Grynberg*, a dispute arose between oil and gas developers and royalty owners of an interest in oil and gas property. *Grynberg*, 7 P.3d at 1062. The royalty owners brought an action to recover royalties before the COGCC so that it could determine the amount of royalties owed. *Id.* The COGCC determined it lacked jurisdiction to decide the case because it involved a

---

[7] Plaintiffs rely on numerous cases for support, but the Court limits its discussion to the three cases most critical to their argument.

12

dispute regarding a contractual interpretation. On appeal, the *Grynberg* court affirmed, holding that "the [COGCC] does not have jurisdiction to interpret any royalty agreement to determine the propriety of disputed post-production deductions." *Id.* at 1063.

The Court acknowledges that *Grynberg* found that the COGCC lacked jurisdiction over disputed post-production deductions. Even KMOG "does not dispute *Grynberg*'s interpretation of the Act, or Plaintiffs' legal entitlement to royalties. Cases presenting bona fide contract interpretation disputes are properly before the courts." (ECF No. 32 at 3.) But the pertinent point is that *Grynberg* was a review of the COGCC's decision to decline jurisdiction over such a dispute. As Defendants point out, this procedural posture reinforces the notion that COGCC determines in the first instance whether it has jurisdiction, not the Court. (*See* ECF No. 31 at 7.) To argue that *Grynberg* is directly on point, Plaintiffs must first assume that a dispute regarding contractual interpretation exists; such an assumption, however, invades the province of the COGCC. As the Court has explained, the parties here dispute whether there is a bona fide dispute over contract interpretation. Under these circumstances, the Court finds *Grynberg* readily distinguishable.

Similarly, while Plaintiffs state that *Atlantic Richfield* is "binding Tenth Circuit precedent" (ECF No. 29 at 2), that position is without merit. Exhaustion of administrative remedies was not at issue in *Atlantic Richfield*. 226 F.3d 1138. Rather, in *Atlantic Richfield*, the operator argued that the district court should have applied certain provisions of the Act to determine the proper rate of prejudgment interest. *Id.* at 1156. In rejecting this argument, the Tenth Circuit noted that the statutory provision in question only applied to proceedings before the COGCC. *Id.* at 1157. In *dicta*, the

Tenth Circuit stated that the Act did not apply to claims alleging a breach of contract. *Id.*

As noted above, the parties here dispute whether there is a bona fide dispute regarding the interpretation of a contract. Thus, the Court's determination that the COGCC should—in accordance with the Act—determine whether such a dispute exists, is not contrary to the Tenth Circuit's statement that the COGCC lacks jurisdiction over disputes involving contractual interpretation. Presupposing that a dispute exists, however, runs afoul of the Act's grant of jurisdiction to the COGCC to decide such an issue. Should the COGCC determine a contract interpretation dispute exists, the Act provides that "the parties may seek resolution of the matter in district court." Colo. Rev. Stat. § 34-60-118.5(5.5).

Plaintiffs also rely on *Crichton* for support. 2017 WL 4838735 (D. Colo. Oct. 26, 2017). In *Crichton*, however, the court determined that the dispute was "contractual in nature," whereas here, the Court has found that based on the dispute between the parties, it cannot definitively state that the dispute is contractual in nature. *Id.* at *4. This is for the COGCC to decide.

The Court emphasizes that this decision is not intended to prejudge one way or another as to whether the COGCC or a court of law has jurisdiction over this dispute. Instead, with this Order, the Court merely adheres to the provision of the Act granting the COGCC authority to determine whether a bona fide dispute exists which divests it of jurisdiction. Depending on what decision the COGCC reaches, consistent with the Act, the parties very well may seek resolution of this matter in district court.[8]

---

[8] Because the Court has determined that it lacks subject-matter jurisdiction based on Plaintiffs' failure to exhaust administrative remedies, it need not address Defendants' other arguments.

14

## V. CONCLUSION

1. Defendant Noble Energy, Inc.'s Motion to Dismiss (ECF No. 23) is GRANTED;

2. Plaintiffs' claims against Noble are DISMISSED without prejudice for lack of subject-matter jurisdiction;

3. Defendant Kerr-McGee Oil & Gas Onshore, LP's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and, In the Alternative, Motion to Stay Proceedings (ECF No. 24) is GRANTED;

4. Plaintiffs' claims against KMOG are DISMISSED without prejudice for lack of subject-matter jurisdiction;

5. Defendants shall have their costs upon compliance with D.C.COLO.LCivR 54.1; and

6. The Clerk shall terminate the case.

Dated this 17th day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge