# **EXHIBIT 1**

**BEFORE THE ENERGY & CARBON MANAGEMENT COMMISSION**
**OF THE STATE OF COLORADO**

| | |
|---|---|
| IN THE MATTER OF THE PAYMENT OF PROCEEDS FROM THE PRODUCTION OF OIL AND GAS AS ESTABLISHED BY SECTION 34-60-118.5, C.R.S., WELD COUNTY, COLORADO | CAUSE NO. 1<br><br>DOCKET NO. 220400088<br><br>TYPE: GENERAL ADMINISTRATIVE |

### NOBLE ENERGY, INC.'S EXCEPTION TO THE HEARING OFFICER'S RECOMMENDED ORDER DECLINING JURISDICTION

Pursuant to the Colorado Energy & Carbon Management Commission ("Commission") Rule 520.c, Noble Energy, Inc. (Operator No. 100322) ("Noble") respectfully submits this Exception to the Hearing Officer's August 23, 2023 Recommended Order Declining Jurisdiction (the "Recommended Order").

### INTRODUCTION & BACKGROUND

1. Mike Boulter, Boulter, LLC, Ralph Nix Produce, Inc., and Barclay Farms, LLC (collectively, "Applicants") commenced these proceedings against Petitioners, Noble and Kerr-McGee Oil & Gas Onshore LP ("Kerr-McGee") (together, "Petitioners"), claiming underpayment of oil royalties from wells in Colorado based on the deduction of certain post-production costs that Applicants claim are not permitted under the parties' oil and gas leases. (*See* Applicants' Verified Application Seeking a Determination Regarding the Commission's Jurisdiction, filed April 14, 2022.)[1] Applicants sought an order stating that the Commission lacks jurisdiction over their payment-of-proceeds claims. (*Id.*)

2. Noble and Kerr-McGee filed Petitions asserting that the Commission had jurisdiction to adjudicate Applicants' claims because the lease terms were unambiguous and settled law established that Petitioners could deduct the post-production costs at issue. (*See* Noble's Petition in Response to Verified Application, filed July 5, 2022; Kerr-McGee's Petition in Response to Verified Application, filed July 5, 2022.)

3. On July 14, 2022, the Hearing Officer entered a stay of the proceedings pending a decision from the Colorado Supreme Court in *Antero Resources Corporation v. Airport Land Partners.* (*See* Order Granting Unopposed Motion for Stay Pending Outcome of Proceeding Before Colorado Supreme Court.) The Court issued its decision on March 27, 2023, holding that "[w]here . . . parties have a good faith dispute about the meaning or application of relevant contractual terms, they bring bona fide disputes of contract interpretation that [the Commission] is prohibited from resolving and that instead belong in district court." *Antero Res. Corp. v. Airport Land Partners, Ltd.*,

---

[1] Noble understands that Kerr-McGee will be submitting copies of relevant documents in the administrative record with its exception for the Commission's convenience.

2023 CO 13, ¶ 42.  The Court further explained that the Payment of Proceeds Statute, C.R.S. § 34-60-118.5(5), "does not confer on [the Commission] the authority to interpret any disputed contract terms—even if those terms seem unambiguous or depend on factual determinations."  *Id.* ¶ 29.

4. Following the *Airport Land* decision, the Hearing Officer lifted the stay, and Applicants filed a motion seeking a determination that the Commission lacked subject matter jurisdiction over Applicants' claims.  (*See* Applicants' Motion for Determination that the Commission Lacks Jurisdiction Over the Parties' Royalty Underpayment Disputes, filed May 5, 2023.)  Petitioners filed a response, agreeing that the Commission must dismiss the matter, but based on the doctrine of *res judicata* because Applicants' district court case, asserting the same claims at issue before the Commission, had been dismissed with prejudice.  (*See* Joint Response to Applicants' Motion for Determination that the Commission Lacks Jurisdiction Over the Parties' Royalty Underpayment Disputes, filed May 26, 2023.)

5. On August 23, 2023, the Hearing Officer issued his Recommended Order Denying Jurisdiction.  The Hearing Officer rejected Petitioners' argument that Applicants' claims were barred by the doctrine of *res judicata*, but found that, under *Airport Land*, the Commission lacks jurisdiction because the parties have a bona fide dispute over the interpretation of lease provisions.

6. Despite the finding that the Commission lacks subject matter jurisdiction to interpret the leases at issue, the Hearing Officer included in his Recommended Order statements indicating that the lease provisions at issue are silent on the subject of post-production costs and that the implied covenant of marketability applies.  (Recommended Order at 6-7.)  ==These statements were not necessary to the Hearing Officer's conclusion that a bona fide dispute of contract interpretation exists, and given that finding, the Commission lacks subject matter jurisdiction to interpret the disputed lease provisions in any way.  Accordingly, these statements should be stricken and not included in the Commission's final order.==

## STANDARD OF REVIEW

7. Under Rule 520.c and C.R.S. § 34-60-108(9), a petitioner may file exceptions to a recommended order within 20 days of the issuance of the recommended order.  The Commission reviews exceptions to a recommended order *de novo*.  Rule 520.c.(1).

8. Any final order of the Commission is subject to judicial review pursuant to C.R.S. §§ 24-4-101 through –108 of the Colorado Administrative Procedure Act. C.R.S. § 34-60-111; Rule 501.d.

## DISCUSSION

9. Colorado's Oil and Gas Conservation Act, §§ 34-60-101 to -130, vests the Commission with jurisdiction to determine "the amount of the proceeds plus interest, if any, due" to a royalty owner. C.R.S. § 34-60-118.5(5)(c). Before exercising jurisdiction over such a dispute, however, the Commission must determine whether the matter involves "a bona fide dispute" of contract interpretation, and if so, the Commission must decline jurisdiction over the dispute. C.R.S. § 34-60-118.5(5.5); *see also Airport Land*, 2023 CO 13, ¶ 1 (The Commission "lacks jurisdiction under section 34-60-118.5(5), C.R.S. (2022), to engage in contract interpretation to resolve a bona fide dispute between parties under an oil and gas lease.").

10. In *Airport Land*, the Colorado Supreme Court provided guidance about what constitutes a "bona fide dispute" of contract interpretation, holding that "such a dispute exists where the parties disagree in good faith about the meaning or application of a relevant contract term." *Airport Land*, 2023 CO 13, ¶ 4. Thus, "once parties whose mineral interests are the subject of a lease agreement have raised a nonfrivolous, genuine dispute about a contract term, jurisdiction to interpret that contract lies with the courts, and not with [the Commission]." *Id.* ¶ 20. "[A]ny good faith contract dispute deprives [the Commission] of jurisdiction by the terms of the statute." *Id.* ¶ 23.

11. Here, the Hearing Officer determined that the case involves a bona fide dispute of contract interpretation. Specifically, he found that the parties have a good faith dispute concerning how the relevant lease provisions concerning oil royalties apply to the deduction of post-production costs. (*See* Recommended Order at 6-7.) He concluded, therefore, that the Commission lacks jurisdiction over the matter.

12. Despite finding that the Commission lacks subject matter jurisdiction to interpret the parties' leases, however, the Hearing Officer included statements within the Recommended Order reflecting his interpretation of the disputed lease provisions. Specifically, the Recommended Order states:

> Here, there is no dispute that Noble Leases do not contain any provisions permitting or even addressing the deduction of post-production costs, so the implied covenant to market applies. *See Antero*, at 211-12. Much like the Airport Lands Leases described in *Airport Land*, the parties' dispute boils down to the point of "marketability" and whether the unloading charges, gathering charges, and tariff charge, among others, are explicitly prohibited by the lease language or among "those expenses necessary to place oil and gas in a condition acceptable for market" as well as what costs included are reasonable for the transport." *Id.*, citing *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 903 (2001).

(Recommended Order at 6.) The Recommended Order further states in regard to the Kerr-McGee leases:

3

> The leases are silent as to post-production costs, and so the implied covenant of marketability applies. Although the parties' dispute implicates questions of fact over what is being deducted from royalty payments, those factual determinations implicate questions of contract interpretation regarding whether the acknowledged deductions are consistent with the implied covenant to market or prohibited by the language of royalty provisions of the leases. *Antero*, at 212.

(*Id.* at 8.)

13. Contrary to what is stated in the Recommended Order, these issues are hotly disputed by the parties. Petitioners have argued before the United States District Court that the lease language at issue is *not* silent on post-production costs. To the contrary, for nearly 100 years, it has been hornbook oil and gas law that where oil royalties are paid under a royalty provision like the provision in the subject leases, post-wellhead costs of transporting and treating the oil are borne by both the operator and royalty owners. *See, e.g.*, 3 Williams & Meyers, Oil and Gas Law § 646.2 ("By weight of authority in cases involving language . . . providing for delivery 'free of cost *in the pipe line* to which Operator may connect his wells,' the expense of transportation or of treating oil or gas . . . must be shared by the owner of the nonoperating interest. . . . Although the operator may have a duty to market the nonoperator's share of the production, this duty will not include the burden of bearing the expense of treating, compressing or transporting such share of production." (Emphasis in original.)); *see also Burlington Res. Oil & Gas Co. LP v. Tex. Crude Energy, LLC*, 573 S.W.3d 198, 206 (Tex. 2019) (overriding royalty interest owner obligated to pay share of post-production costs under agreements providing for delivery "into the pipelines, tanks, or other receptacles with which the wells may be connected"); *Molter v. Lewis*, 134 P.2d 404, 405, 408 (Kan. 1943) (lessor was obligated to pay share of transportation costs under lease providing that lessee was "[t]o deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.").

14. This issue was not briefed before the Commission, and the Hearing Officer's statements regarding the meaning of the lease provisions at issue were not necessary to his finding of a bona fide dispute of contract interpretation. Indeed, given this finding, the Commission lacks subject matter jurisdiction to interpret the parties' lease agreements in any way. *See Airport Land*, 2023 CO 13, ¶ 22 ("[W]hen the parties in good faith disagree about the meaning or application of a relevant term in a lease agreement or contract, there is a 'bona fide dispute over the interpretation of a contract' that divests [the Commission] of jurisdiction.").

15. Because the Commission lacks jurisdiction to interpret the parties' lease agreements, the statements in the Recommended Order interpreting the agreements should be stricken. In the alternative, the Commission should include in its final order an additional statement clarifying that—consistent with the guidance from *Airport Land*—nothing in the order should be construed as a finding concerning the meaning of

4

the disputed lease language, but rather the order simply reflects the Commission's conclusion that there exists a bona fide dispute concerning contract interpretation.

## CONCLUSION & REQUEST FOR RELIEF

16.     For the foregoing reasons, Noble respectfully requests that the Commission either (1) strike the second full paragraph on page 6 of the Recommended Order and the first full paragraph on page 7, as shown on the Proposed Order submitted by Kerr-McGee, or (2) include in the final order a statement clarifying that nothing in the order should be construed as a finding concerning the meaning of the disputed lease language, but rather the order simply reflects the Commission's conclusion that there exists a bona fide dispute concerning contract interpretation.

Dated: September 12, 2023

Respectfully submitted,

DAVIS GRAHAM & STUBBS LLP

 *s/ James R. Henderson*
Jonathan W. Rauchway
James R. Henderson

*Attorneys for Noble Energy, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that, on September 12, 2023, I caused a true and correct copy of **NOBLE ENERGY, INC'S EXECPTION TO THE HEARING OFFICER'S RECOMMENDED ORDER DECLINING JURISDICTION** in Colorado Energy and Carbon Management Commission Docket No. 220400088 to be served via electronic mail through the Colorado Energy and Carbon Management Commission hearings e-filing system at the addresses listed below:

Colorado Energy and Carbon Management Commission
ATTN: Mimi Larsen and Elias Thomas
Mimi Larsen – mimi.larsen@state.co.us
Elias Thomas – elias.thomas@state.co.us

                                    *s/ Lauren Norman*