# EXHIBIT 2

**BEFORE THE ENERGY & CARBON MANAGEMENT COMMISSION**
**OF THE STATE OF COLORADO**

| | |
|---|---|
| IN THE MATTER OF THE PAYMENT OF PROCEEDS FROM THE PRODUCTION OF OIL AND GAS AS ESTABLISHED BY SECTION 34-60-118.5, C.R.S., WELD COUNTY, COLORADO | CAUSE NO. 1<br><br>DOCKET NO. 220400088<br><br>TYPE: GENERAL ADMINISTRATIVE |

**KERR-MCGEE OIL & GAS ONSHORE LP'S EXCEPTION TO THE HEARING OFFICER'S RECOMMENDED ORDER DECLINING JURISDICTION**

Pursuant to the Colorado Energy & Carbon Management Commission ("Commission") Rule 520.c, Kerr-McGee Oil & Gas Onshore LP (Operator No. 47120) ("Kerr-McGee") respectfully submits this Exception to the Hearing Officer's Recommended Order Declining Jurisdiction ("Order") (Exhibit A).

**I.   INTRODUCTION**

1. Many decisions have explored the Commission's authority to interpret contracts to resolve oil and gas royalty payment disputes under C.R.S. § 34-60-118.5(5). The Colorado Supreme Court recently determined that the Commission lacks the authority to interpret disputed contract terms. *See Antero Res. Corp. v. Airport Land Partners, Ltd.*, 2023 CO 13, ¶ 29 (Exhibit B).

2. The Hearing Officer's Order is one of the first to address the Commission's jurisdiction over payment of proceeds disputes involving oil and gas leases following the *Airport Land* decision. As a result, it is important that the Commission act in accordance with the Supreme Court's ruling.

3. Kerr-McGee files this limited Exception to the Order because, in concluding that the Commission could not interpret disputed contract terms, the Hearing Officer included his interpretation of disputed contract terms. The Hearing Officer (a) opined that the oil royalty provisions are "silent" as to deductions for post-production costs, a contract interpretation that Kerr-McGee disputes and that rejects multiple court rulings that considered similar royalty clauses, and (b) interpreted the oil royalty clauses to be subject to the implied covenant to market natural gas, a legal determination that no party briefed or requested. Those contract interpretations are not necessary to the determination that the Commission lacks jurisdiction.

4. The Commission should strike the second full paragraph on page 6 and the first full paragraph on page 7 of the Order because they contravene the Supreme Court's ruling in *Airport Land*.

## II. PROCEDURAL HISTORY

5. The dispute before the Commission commenced when Mike Boulter, Boulter, LLC, Ralph Nix Produce, Inc., and Barclay Farms, LLC (collectively, "Applicants") filed a Form 38 Payment of Proceeds Hearing Request alleging that Noble Energy, Inc. ("Noble") and Kerr-McGee (together, "Petitioners"), underpaid royalties from the proceeds of the sale of oil from wells in Colorado by deducting certain post-productions costs from the Applicants' oil royalty payments made pursuant to their oil and gas leases with the Applicants ("Leases"). *See* Verified Application Seeking a Determination Regarding the Commission's Jurisdiction (Vol. 1 at 1-13). The Applicants argued that the Leases do not allow Petitioners to deduct post-production costs from the oil royalty payments owed to the Applicants. *Id*. at 3. The Applicants sought an order stating the Commission lacks jurisdiction over Applicants' oil royalty payment claims. *Id*. at 11. The Verified Application is limited to royalty payments on oil. *Id*. at 4-5. The Verified Application does not involve royalty payments on natural gas. *Id*.

6. Kerr-McGee and Noble filed Petitions asserting the Commission's jurisdiction to adjudicate Applicant's claims due to the "settled law" that the Leases at issue allow Petitioners to deduct post-production costs. *See* Kerr-McGee's Petition in Response to Verified Application (Vol. 3 at 4) and Noble's Petition in Response to Verified Application (Vol. 2 at 277-80).

7. The Commission entered a stay of the Application and Petitions pending a decision in *Airport Land* because the *Airport Land* decision "bears upon the Commission's jurisdiction or lack thereof with regard to what constitutes a bona fide dispute over the interpretation of a contract for payment." Commission Order dated July 14, 2022 (Vol. 4 at 139).

8. On March 27, 2023, the Colorado Supreme Court issued its decision in *Airport Land*. The Supreme Court concluded that C.R.S. § 34-60-118.5(5) "does not confer on [the Commission] the authority to interpret any disputed contract terms—even if those terms seem unambiguous or depend on factual determinations." *Airport Land* at ¶ 29. The Supreme Court also held that where "parties have a good faith dispute about the meaning or application of relevant contractual terms, they bring bona fide disputes of contract interpretation that COGCC is prohibited from resolving and that instead belong in district court." *Airport Land* at ¶ 42.

9. Following the *Airport Land* decision, the Hearing Officer lifted the stay of the Verified Application, and the Applicants filed a Motion for Determination that the Commission Lacks Jurisdiction Over the Parties' Royalty Underpayment Disputes. *See* Motion for Determination (Vol. 4 at 142). The Applicants argued that the Commission must dismiss their Application because the Commission does not have the authority to decide the parties' royalty dispute pursuant to C.R.S. § 34-60-118.5(5). According to the Applicants, "the Supreme Court [in *Airport Land*] confirmed 'the statute does not confer on the Commission the authority to interpret any disputed contract terms—even if

2

those terms seem unambiguous or depend on factual determinations.'" Vol. 4 at 143 (quoting *Airport Land* at ¶ 29).

10. In response, the Petitioners submitted that the Hearing Officer must dismiss the Application under the doctrine of res judicata. Vol. 4 at 422-27 (Joint Response to Applicants' Motion for Determination). Petitioners argued that a federal district court's dismissal *with prejudice* of Applicant's claims barred Applicants from pursuing their Application before the Commission. *Id*. at 424-27.

11. The Hearing Officer considered the parties' briefing and determined that res judicata does not bar the Application from proceeding. Vol. 4 at 443-44. The Hearing Officer also declined subject matter jurisdiction after concluding the Applicants' claims involve a bona fide dispute of contract interpretation. *Id*. at 444-46.

12. Despite concluding that "the Commission lacks jurisdiction" to interpret the Leases, the Hearing Officer announced his interpretations of Leases in a section entitled "Conclusions of Law and Analysis."

   a. With respect to the Noble Leases, the Order states, "there is no dispute that Noble Leases do not contain any provisions permitting or even addressing the deduction of post-production costs, so the implied covenant to market applies." *Id*. at 445.

   b. For the Kerr-McGee Leases, the Order states, "[t]he leases are silent as to post-production costs, and so the implied covenant of marketability applies." *Id*. at 446.

13. Kerr-McGee disputes the Hearing Officer's interpretation of the Leases, the statement that the Leases "are silent" as to oil post-production costs, and that the implied covenant to market natural gas applies at all to oil. The Order, which interprets the Leases when the Commission is without jurisdiction to do so, is prejudicial to Kerr-McGee.

14. Kerr-McGee requests that the Commission modify pages 6 and 7 of the Order that contain the Hearing Officer's interpretations of the Leases because the Supreme Court decided in *Airport Land* that the Commission—and the Commission's Hearing Officers—do not have "the authority to interpret any disputed contract terms—even if those terms seem unambiguous or depend on factual determinations." *Airport Land* at ¶ 29.

### III.   STANDARD OF REVIEW

15. Under Rule 520.c.(1), the Commission reviews exceptions under a de novo standard and the Commission's review is "upon the same record before the Administrative Law Judge or Hearing Officer." Rule 520.c.(1); C.R.S. § 34-60-108(9).

3

16.     Any final order of the Commission is subject to judicial review pursuant to C.R.S. §§ 24-4-101–108 of the Colorado Administrative Procedure Act. C.R.S. 34-60-111; Rule 501.d. Consistent with the Colorado Administrative Procedure Act, when the Commission reviews a Hearing Officer order, the Commission "shall hold unlawful and set aside the agency action and shall restrain the enforcement of the order or rule under review, compel any agency action to be taken that has been unlawfully withheld or unduly delayed, remand the case for further proceedings, and afford other relief as may be appropriate if the court finds that the agency action is: . . .  (IV) In excess of statutory jurisdiction, authority, purposes, or limitations; . . . (VI) An abuse or clearly unwarranted exercise of discretion; . . . (VII) Based upon findings of fact that are clearly erroneous on the whole record; . . . or (IX) Otherwise contrary to law."  C.R.S. § 24-4-106(7)(b).

17.     "The agency may remand the case to the . . . the hearing officer for such further proceedings as it may direct, or it may affirm, set aside, or modify the order or any sanction or relief entered therein, in conformity with the facts and the law." C.R.S. § 24-4-105(15)(b); *see also* C.R.S. § 34-60-108(9) ("The commission may adopt, reject, or modify the recommended order.").

## IV.   DISCUSSION

### A. Section 34-60-118.5 and Airport Land Prohibit the Hearing Officer's Interpretation of Leases

18.     Under Section 33-60-118.5(5.5), the Colorado Legislature granted the Commission the power and duty to determine whether a contract interpretation dispute exists, and whether such dispute is bona fide. *See* C.R.S. § 34-60-118.5 (absent a bona fide contract dispute, the Commission shall have jurisdiction to determine "[t]he amount of the proceeds plus interest, if any, due a payee by a payer.").  At the same time, the statute prohibits the Commission from interpreting a contract.  *See Airport Land* at ¶ 29 ("The statute does not confer on [the Commission] the authority to interpret any disputed contract terms—even if those terms seem unambiguous or depend on factual determinations. Rather, the statute clearly removes from [the Commission's] jurisdiction any bona fide —that is, '[m]ade in good faith; without fraud or deceit' or '[s]incere; genuine,'—disagreement that requires any degree of contract interpretation to resolve.").

19.     Courts interpret contracts "to determine what the parties meant or intended when they used a particular word or phrase." WILLISTON ON CONTRACTS § 32:1 (4th ed.).  Contract interpretation includes determining the meaning of words, applying that meaning to the context and circumstances of a transaction, determining whether a contract is ambiguous, and construing unambiguous language, among other things.  *Id*. (generally describing the rules of contract interpretation).  By prohibiting the Commission from interpreting contracts, the Legislature prohibited the Commission from making the legal determinations that courts may make in interpreting contracts.

4

20. Here, the Hearing Officer directly interpreted the Leases in the Order. The Hearing Officer opined that: the "Noble Leases do not contain any provisions permitting or even addressing the deduction of post-production costs, so the implied covenant to market applies", and that the Kerr-McGee "leases are silent as to post-production costs, and so the implied covenant of marketability applies." Vol. 4 at 445-46.

21. The Hearing Officer's "Conclusions of Law" resulted in two independent contract interpretations that no party requests and that Kerr-McGee disputes. Nor are those interpretations necessary to the Hearing Officer's conclusion that the Commission lacks jurisdiction.

*1. The Hearing Officer Exceeded the Commission's Statutory Authority When He Interpreted the Oil Royalty Payment Provisions in the Noble and Kerr-McGee Leases to be "Silent" Regarding Post-Production Costs*

22. When the Hearing Officer directly analyzed the Noble and Kerr-McGee Leases and determined that they were "silent," the Hearing Officer interpreted the contracts and wrongly determined that none of the contract terms addressed post-production costs. Vol. 4 at 445-46.

23. As noted in its Petition, Kerr-McGee strongly disputes that the Leases are "silent" as to post-production costs. *See* Kerr-McGee Petition (Vol. 3 at 4). Multiple courts in other jurisdictions have determined that nearly identical oil royalty payment provisions expressly authorize deduction of post-production costs. *Id.* (citing *Blasi v. Bruin E&P Partners, LLC*, 959 N.W.2d 872, 878-79 (N.D. 2021) (ruling that transportation costs were properly deductible from the lessor's royalty); *Cameron v. Stephenson*, 379 F.2d 953, 955 (10th Cir. 1967) (lessor was responsible for its share of oil pipeline transportation costs under lease providing for delivery of royalty oil "free of cost to the credit of assignor at the pipeline") (applying Oklahoma law); *Molter v. Lewis*, 134 P.2d 404 (Kan. 1943) (lessor was obligated to pay share of transportation costs for oil)). Indeed, it is because of this "settled law" that Kerr-McGee initially argued the Commission had jurisdiction over the Application. Vol. 3 at 4.

24. By interpreting the contract language and determining that the Leases were "silent," the Hearing officer exceeded the Commission's authority. Vol. 4 at 446. No party requested the Commission to make that determination and it was not necessary to the Hearing Officer's conclusion that the Commission lacks jurisdiction.

25. A Commission Hearing Officer's contract interpretation regarding disputed contract terms, despite lacking jurisdiction, is prejudicial to both applicants and petitioners.

26. The Commission should strike the Hearing Officer's contract interpretation on pages 6 and 7 of the Order that the Leases are "silent" and that none of the Leases' oil royalty provisions addressed post-production costs.

*2. The Hearing Officer Exceeded the Commission's Statutory Authority When He Concluded the Oil Royalty Payment Provisions in the Noble and Kerr-McGee Leases Are Subject to the Implied Covenant to Market Natural Gas*

27. The Hearing Officer separately interpreted the oil royalty payment provisions of the Leases to conclude that "the implied covenant of marketability applies." Volume 4 at 445-46. Kerr-McGee disputes that interpretation because it is based on a material error of law.

28. The implied covenant to market applies to natural gas. *See Rogers v. Westerman Farm Co.*, 29 P.3d 887, 903 (2001) (Exhibit C). This is because the physical nature of natural gas requires a producer to process the natural gas to put the gas into a marketable state. *See id.* at 891-92. Oil, on the other hand, does not require the same processing as gas and is marketable at the wellhead. No Colorado court—or any other court that Kerr-McGee is aware of—has ever applied the implied covenant to market natural gas to an oil royalty clause.

29. The Hearing Officer cited *Airport Land* and *Rogers v. Westerman* to conclude that the implied covenant to market natural gas applies to the parties' oil royalty dispute. *See* Vol. 4 at 445 (citing *Rogers v. Westerman*). The Hearing Officer's reliance on both cases is misplaced because oil royalties were not at issue in either decision whereas the Application only involves oil royalties. Again, *Airport Land* and *Rogers v. Westerman* did not rule that the implied covenant to market natural gas applies to oil.

30. The Hearing Officer likely overlooked these details because no party briefed the issue of whether the implied covenant to market natural gas applies to oil royalties and no party requested the Commission to render a decision about the issue. Kerr-McGee disputes that the implied covenant to market natural gas applies to the oil royalty clauses of the leases.

31. Given that the Hearing Officer erred in erroneously concluding that the implied covenant to market natural gas applies to oil royalty provisions (a conclusion that is wholly unnecessary to the Order), the Commission should strike those statements from pages 6 and 7 of the Order.

*B. The Commission Must Set Aside the Hearing Officer's Contract Interpretations*

32. Determining whether the Leases address (or not) post-production costs, and whether the oil royalty provisions are subject to the implied covenant to market natural gas requires contract interpretation. This exceeds the authority of the Commission. *Airport Land* at ¶ 4 (Where "parties have a good faith dispute about the meaning or application of relevant contractual terms, they bring bona fide disputes of contract interpretation that COGCC is prohibited from resolving and that instead belong in district court.").

33.	Kerr-McGee disputes the Hearing Officer's contract interpretations. The Hearing Officer's Order exceeds the Commission's authority and is prejudicial to Kerr-McGee. The Commission should strike the portions of the Hearing Officer's Order that contain contract interpretations. *See* C.R.S. §§ 24-4-106(7)(b)(IV), (VI) & (VII); C.R.S. § 34-60-108(9); and *Airport Land* at ¶ 29; *see also Gessler v. Colorado Com. Cause*, 327 P.3d 232, 238 (Colo. 2014) (vacating agency rule that exceeded agency's statutory authority).

## V.	CONCLUSION & REQUEST FOR RELIEF

34.  In concluding that the Commission does not have jurisdiction to interpret the Leases, the Hearing Officer interpreted the oil royalty clauses in the Leases. Kerr-McGee disputes those interpretations. The simplest solution is to strike from the Order the second full paragraph on page 6 and the first full paragraph on page 7 as shown on the Proposed Order (Exhibit D).

7

Respectfully submitted this 12th day of September, 2023.

| | |
|---|---|
| JOST ENERGY LAW, P.C. | WILLIAMS WEESE PEPPLE & FERGUSON PC |
| *s/ Jamie L. Jost* | *s/ Ezekiel J. Williams* |
| Jamie L. Jost<br>Kelsey H. Wasylenky<br>1401 17th Street, Suite 370<br>Denver, Colorado 80202<br>Telephone:  720-446-5620<br>Email: jjost@jostenergylaw.com<br>          kwasylenky@jostenergylaw.com | Ezekiel J. Williams<br>Carlos Romo<br>Jacqueline Hyatt<br>1801 California Street, Suite 3400<br>Denver, Colorado 80202<br>Telephone:  303-861-2828<br>E-mail: zwilliams@williamsweese.com<br>          cromo@williamsweese.com<br>          jhyatt@williamsweese.com |
| | GIBBS & BRUNS LLP |
| | *s/ Anthony Kaim* |
| | Anthony Kaim<br>Shannon Smith<br>1100 Louisiana, Suite 5300<br>Houston, Texas 77002<br>Telephone:  303-861-2828<br>E-mail: akaim@gibbsbruns.com<br>          ssmith@gibbsbruns.com |

8

## CERTIFICATE OF SERVICE

      I hereby certify that, on September 12, 2023, I caused a true and correct copy of **KERR-MCGEE OIL & GAS ONSHORE LP'S EXECPTION TO THE HEARING OFFICER'S RECOMMENDED ORDER DECLINING JURISDICTION** in Colorado Energy and Carbon Management Commission Docket No. 220400088 to be served via electronic mail through the Colorado Energy and Carbon Management Commission hearings e-filing system at the addresses listed below:

Colorado Energy and Carbon Management Commission
ATTN: Mimi Larsen and Elias Thomas
Mimi Larsen – mimi.larsen@state.co.us
Elias Thomas – elias.thomas@state.co.us

                                        *s/ Jamie L. Jost*
                                        JOST ENERGY LAW, P.C