IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00861-WJM-SBP

MIKE BOULTER,
BOULTER, LLC,
RALPH NIX PRODUCE, INC., and
BARCLAY FARMS, LLC, on behalf of themselves and classes of similarly situated persons,

 Plaintiffs,

v.

NOBLE ENERGY, INC., and
KERR-MCGEE OIL & GAS ONSHORE, LP,

 Defendants.

---

### ORDER ON MOTIONS TO ENFORCE PROTECTIVE ORDER AND TO RESTRICT DOCUMENTS

---

**Susan Prose, United States Magistrate Judge**

 This case is closed, but the court has before it two motions. Defendant Kerr-McGee Oil & Gas Onshore LP ("KMOG") moves to enforce a stipulated protective order governing confidential information produced in discovery in this matter. ECF No. 72 ("Motion to Enforce"). Plaintiffs Mike Boulter, Ralph Nix Produce, Inc., and Barclay Farms, LLC ("Plaintiffs") move for leave to restrict four documents that they filed in response to the Motion to Enforce. ECF No. 78 ("Motion to Restrict").[1] The Motions are referred. ECF Nos. 73, 77. For

---

[1] Three of the four named Plaintiffs in this case—Mr. Boulter, Ralph Nix Produce, and Barclay Farms—originally docketed the Motion to Restrict at ECF No. 76, but that filing inadvertently included two copies of a proposed order without the Motion to Restrict. The Motion to Restrict was then filed at ECF No. 78.

the reasons that follow, the Motion to Enforce is **GRANTED**, subject to the limitations on relief as set forth below, and the Motion to Restrict is **GRANTED**.

I.     **Procedural History**

The court begins with the salient aspects of the complex procedural history of the litigation between the parties here.

In 2020, Plaintiffs brought the instant case, a purported class action, against KMOG and Noble Energy, Inc. ECF Nos. 1 (complaint); 7 (amended complaint). For clarity, the court will refer to this case as "*Boulter I*." Both Defendants moved to dismiss the action. ECF Nos. 23, 24. They also sought to stay discovery pending the resolution of their motions to dismiss, which Judge Kristen L. Mix, the United States magistrate judge previously assigned to the case, denied. ECF No. 47. On December 2, 2020, Judge Mix entered a Stipulated Protective Order and Confidentiality Agreement, ECF No. 53 ("Protective Order"), which defined "Confidential Information" as encompassing "information that the designating person or entity reasonably and in good faith believes constitutes, contains, or comprises confidential or sensitive business or financial information or documents." *Id.* ¶ 3. The Protective Order circumscribed the use of all "Confidential Information":

> All CONFIDENTIAL information, and any notes, work papers, summaries, or other documents prepared from such CONFIDENTIAL information, may be used by the receiving Party **solely in connection with the Litigation** and may not be disclosed by the receiving Party[.]

*Id.* ¶ 6 (emphasis added). As pertinent to the dispute raised in the Motion to Enforce, KMOG produced certain documents designated as "Confidential Information" under the Protective Order on February 4, 2021. *See* Motion to Enforce at 3.

2

On February 17, 2021, Judge Martínez granted Defendants' motions to dismiss for lack of subject matter jurisdiction because Plaintiffs had failed to comply with then-existing exhaustion requirements under state law. ECF No. 58 (order); ECF No. 59 (final judgment). *Boulter I* was closed on the same date. Plaintiffs did not appeal in *Boulter I*.

More than two years after judgment entered in *Boulter I*, Plaintiffs filed a motion to reopen the matter pursuant to Federal Rule of Civil Procedure 60(b). Judge Martínez denied that motion on November 22, 2023. ECF No. 71 (order).

On May 22, 2024, Plaintiffs brought a new case against KMOG: *Mike Boulter et al. v. Kerr-McGee Oil & Gas Onshore, LP*, No. 24-cv-01459-SKC-KAS (D. Colo.). The parties refer to the new case as *Boulter VI*, as does this court.

On June 13, 2024, KMOG filed a motion to dismiss in *Boulter VI*, ECF No. 8, which Judge Crews recently denied. Plaintiffs' response to that motion to dismiss signals the dispute about the confidential information that is at issue in the Motion to Enforce now before this court:

> On July 10, 2024, Plaintiffs' counsel conferred with KMOG's counsel regarding their motion to file the relevant policy and procedure produced by KMOG in underlying litigation (*Boulter I*) as restricted. Even though[] the document was originally produced in February 2021,[2] on July 10, 2024, KMOG asserted, for the first time, that the relevant document is protected by the attorney-client privilege,

---

[2] It is apparent from the documents appended to Plaintiffs' response to the motion to dismiss that this "document" actually refers to two separate documents: one called the "Rockies Settlement Marketing Exemptions Guideline" and the other called the "Wattenberg Marketing Exemptions." *See Boulter VI*, ECF Nos. 14 to 14-4. Plaintiffs assert that the two documents contain different iterations of the same policy, which they collectively call the "Guidelines." ECF No. 14 at 2. In this order, the court refers to these confidentially-designated documents as the "Guidelines." Relatedly, the court notes that the Motion to Enforce does not specifically refer to the bates-range encompassing the Wattenberg Marketing Exemptions, *see* ECF No. 72 ¶ 9, which appears to have been a scrivener's error. The court construes the Motion to Enforce as seeking protection for both components of the "Guidelines."

> and that the document was inadvertently produced by KMOG back in 2021. Plaintiffs disagree with KMOG's position that the document is privileged and will promptly file a Motion for In Camera Review for the [*Boulter VI*] Court to determine whether the document is protected by the asserted privilege.

*Boulter VI*, ECF No. 13 at 12 n.4. As they had indicated, on July 16, 2024, Plaintiffs filed a document titled "Motion for In Camera Review and Determination Regarding Applicability of Attorney-Client Privilege" on July 16, 2024. *Boulter VI*, ECF No. 14 ("In Camera Motion").

KMOG took several steps in response to Plaintiffs' filings in *Boulter VI*. First, KMOG filed the instant Motion to Enforce on July 18, 2024. ECF No. 72. A week later, in *Boulter VI*, KMOG moved to strike Plaintiffs' response to the motion to dismiss and the In Camera Motion on grounds that the use of the Guidelines in those filings violates the Protective Order issued in *Boulter I*. *Boulter VI*, ECF No. 19.[3]

Finally, as relevant to the procedural timeline, Plaintiffs filed the Motion to Restrict on July 30, 2024, asking this court to restrict access to certain documents, including the Guidelines, appended to their response to the Motion to Enforce. *Boulter I*, ECF No. 78.

The court first addresses KMOG's Motion to Enforce, then turns to Plaintiffs' Motion to Restrict.

## II. Motion to Enforce

In the Motion to Enforce, KMOG argues that Plaintiffs violated the Protective Order by using the Guidelines produced in *Boulter I* in the litigation in *Boulter VI*, by retaining and refusing to destroy the Guideline after Defendants clawed them back, and by refusing to certify

---

[3] Very recently, Judge Crews denied both the motion to strike and the In Camera Motion without prejudice. *Boulter I*, ECF No. 47 at 10. That ruling does not affect this court's evaluation of the pending Motion to Enforce and Motion to Restrict.

4

destruction of all confidential information after the final disposition of *Boulter I*. Motion to Enforce at 5-8.

### A. Legal Principles

The interpretation of protective orders rests in the discretion of the trial court. *See, e.g.*, *Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, 843 F. App'x 134, 138 (10th Cir. 2021) (decisions regarding protective orders are reviewed for abuse of discretion) (citing *S.E.C. v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010)); *Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1092 (10th Cir. 2010) (recognizing this "deferential standard of review," and stating "that a district court is in the best position to define the scope of the discovery orders and attendant protective orders it issues"). "The starting point for interpretation of a protective order lies in its plain language." *Merrill Scott*, 600 F.3d at 1271; *see also Crocs, Inc. v. Joybees, Inc.*, No. 21-cv-02129-GPG-SBP, 2023 WL 8851997, at *6 (D. Colo. Dec. 8, 2023) ("The court must interpret the protective order reasonably in light of its express terms and stated purposes.") (citing *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 696 (9th Cir. 1993) ("For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets.").

"Protective orders serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant." *Merrill Scott*, 600 F.3d at 1272 (cleaned up). "This being the case, courts should be wary of retroactive attempts to modify them in ways that undermine" their stated purposes. *See id.*

5

B.     Analysis

1.     **Use of Confidential Information Obtained in *Boulter I* in *Boulter VI***

This court agrees with KMOG that Plaintiffs violated the Protective Order by using the Guidelines in *Boulter VI*.

Recall that the Protective Order specifies that "[a]ll Confidential information, and any notes, work papers, summaries, or other documents prepared from such Confidential information, may be used by the receiving Party **solely** in connection with the Litigation and may not be disclosed by the Receiving Party[.]" *Id.* ¶ 6 (emphasis added). Put simply, irrespective of any other litigation between the parties, they agreed to limit the use of all materials produced and designated as "Confidential Information" in *Boulter I* "solely" to that case. This unequivocal language is the beginning and end of the assessment. The court finds none of Plaintiffs' counter-arguments persuasive.

Plaintiffs first argue that the Protective Order does not preclude them from using confidential informant from *Boulter I* because *Boulter VI* "is obviously a continuation of the same breach of contract dispute between the exact same parties." ECF No. 74 at 2. It is not an "obvious" point that *Boulter VI* is a mere "continuation" of *Boulter I*, particularly for purposes of a protective order explicitly governing the production of confidential information in that particular case. As KMOG correctly observes, Plaintiffs have filed numerous separate lawsuits against KMOG and Noble Energy, each with its own unique procedural history at the trial court and appellate levels. *See id.* at 3-6 (describing *Boulter II*, No. 21-cv-01345-RM-KLM (D. Colo.); *Boulter III*, No. 21-cv-03500-RM-SKC-SKC (D. Colo.); *Boulter IV*, No. 22-cv-01843-DDD-SKC (D. Colo.); *Boulter V*, No. 24-cv-01459-SKC-KAS (D. Colo.)). It may be that Plaintiffs

6

have continued to pursue claims that are "substantially identical" throughout their numerous complaints, *e.g.*, *id.* ¶¶ 13, 15, 16, 24, but there is nothing in the plain language of the Protective Order countenancing the idea that its protections are eviscerated when Plaintiffs decide to pursue similar litigation. To construe the Protective Order in that fashion would run afoul of the court's obligation to interpret the Order by starting with its "plain language," which does not contemplate that protected confidential information can be used in any other litigation—irrespective of any similarities between them. *Merrill Scott*, 600 F.3d at 1271. And again construing the Protective Order in accordance with its plain terms, there is no basis for the court to find that the protections imposed by that court order ended because *Boulter I* was dismissed without prejudice for lack of subject matter jurisdiction, as opposed to "on the merits." ECF No. 74 at 2. There is no "on the merits" exception to the parties' obligation to continue to abide by the terms of the Protective Order. *See* Protective Order ¶ 21 ("**Survival.** This Protective Order will survive the final disposition of the Litigation, by judgment, dismissal, settlement, appeal, or otherwise.").

Plaintiffs cite no legal authority that would authorize this court to retroactively rewrite the terms of the Protective Order to countenance the use in *Boulter VI* of confidential information produced by KMOG in *Boulter I*. Plaintiffs assert that the authority cited by KMOG is "wholly distinct," ECF No. 74 at 12-13, but the court must disagree with that characterization. In particular, the United States Court of Federal Claims rejected a nearly identical argument, based on a protective order which—like the one at issue here—directed that "[p]rotected information may be used *solely for the purposes of this litigation* and may not be given, shown, made available, discussed, or otherwise conveyed in any form except as provided herein."

7

*Pyramid Real Estate Servs., LLC v. United States*, 95 Fed. Cl. 613, 615 (2010) (emphasis added). The court explained the basis for rejecting the plaintiff's argument that "the phrase 'this litigation' does not prohibit use of protected information in a protest *in the same forum, of the same procurement, and on behalf of the same client*":

> In support of its position, Matt Martin relies on an absence of authority: "Defendant has cited no case in which such use has constituted a violation of a protective order." The fact that such a case cannot be found, however, appears instead to highlight what an unusual interpretation of the Protective Order Matt Martin urges on the court. **Matt Martin cites no case in which a party was permitted to rely in one action on information it received pursuant to a protective order in another, regardless of how closely the two are related.** To the contrary, parties that use protected information outside of the litigation in which it is disclosed are typically sanctioned if they did not first seek and receive leave from the court that granted the protective order.

*Id.* at 620 (internal citations omitted) (emphasis added).

Just so here. Plaintiffs cite no case in which a party was permitted to rely in one action on information it received pursuant to a protective order in another, regardless of how closely the two are related. Neither has this court located such a case. Moreover, to the extent Plaintiffs' argument could be read to imply that they have not actually "used" the Guidelines in *Boulter VI*, there is likewise no support for that contention. Plaintiffs referred to the content of confidential information contained in the Guidelines in resisting the motion to dismiss in *Boulter VI*. ECF No. 74 at 12 ("In fact, the evidence produced by Kerr-McGee in the underlying litigation (*Boulter I*) suggests that Kerr-McGee has applied the *Rogers* decision with respect to both oil and natural gas production."). By any commonsense construction, relying on confidential information to explain the alleged actions of KMOG constitutes a "use" of KMOG's confidential information in violation of the Protective Order. *See City of Fort Collins v. Open Int'l, LLC*,

No. 21-cv-02063-CNS-MEH, 2022 WL 7582436, at *4 (D. Colo. Aug. 16, 2022) (recognizing that "use" involves the utilization of "the confidential *content* within the [protected] documents") (citing *Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, No. 14-cv-1296-JPS, 2016 WL 1719657, at *1, 4 (E.D. Wis. Mar. 16, 2016)).

Finally, Plaintiffs assert that applying the terms of the Protective Order as written "will not further the purpose" of Federal Rule of Civil Procedure 1. ECF No. 74 at 16. To the contrary, as the Tenth Circuit has recognized, protective orders "allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action.'" *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (quoting Fed. R. Civ. P. 1); *see also Merrill Scott*, 600 F.3d at 1272 ("Protective orders serve the vital function of secur[ing] the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.") (quotation omitted).

The parties "justified reliance" on the terms of a protective order will be undermined by any retroactive rewriting of its terms, which this court is not authorized to do and will not do. *See Merrill Scott*, 600 F.3d at 1272 ("Unless protective orders are fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences.") (quotation omitted). The court will not allow Plaintiff to circumvent the protections provided in the Protective Order in *Boulter I*.

For these reasons, the court finds that Plaintiffs' use of the confidential Guidelines in *Boulter VI* violated the Protective Order.

## 2. KMOG's Disclosure of the Guidelines and Clawback Request

KMOG argues that Plaintiffs also violated the Protective Order by refusing to destroy the Guidelines, which KMOG asserts are privileged and were inadvertently produced in *Boulter I*. Motion to Enforce at 6-8.

On July 10, 2024, Plaintiffs informed KMOG that they intended to attach the Guidelines to their response to the motion to dismiss in *Boulter VI*. ECF No. 72-1 at 7. In response, KMOG asserted that the Guidelines are "attorney-client privileged" and were "inadvertently produced in *Boulter I*." *Id.* at 5. KMOG invoked Paragraph 13 of the Protective Order:

> **Inadvertent Disclosure of Privileged Information.** Nothing contained in this Protective Order will affect in any manner any claim of privilege or work product protections or any other privilege or immunity. Inadvertent production of documents or information otherwise subject to the attorney-client or other privilege or work product immunity will not constitute a waiver of any such privilege or immunity. Upon written notification that a document or information has been inadvertently produced and that a claim of privilege or work product will be made with regard to such document or information, the Party receiving such notice shall refrain from using said document or information in any manner or form, including specifically, but not exclusively, use during discovery, review with witnesses, use at a hearing, or any other disclosure or review whatsoever, and promptly shall return to the producing person or entity and destroy any copies of the inadvertently or erroneously produced documents or information, *unless otherwise ordered by the Court*.

Protective Order ¶ 13 (emphasis added). KMOG asked Plaintiffs to destroy the Guidelines. ECF No. 72-1 at 5.[4] Plaintiffs refused, asserting that KMOG had waived any privilege because

---

[4] Counsel for KMOG observed that "in a separate litigation filed by [Plaintiffs'] counsel on behalf of different entities as plaintiffs in Denver District Court, Kerr-McGee obtained a ruling

"(1) Kerr-McGee has waited over 3 years to assert a privilege; (2) there are no indications that Kerr-McGee took reasonable steps to prevent the disclosure of the allegedly privileged document; and (3) the extent of the disclosure is such that no meaningful confidentiality can be restored with respect to the contents of the Marketing Exemption Guidelines." *Id.* at 3.

At this juncture, the parties' core dispute is whether Paragraph 13 of the Protective Order, or whether the clawback procedures established in Federal Rule of Civil Procedure 26(b)(5)(B),[5] controls the management of the Guidelines. Although both sides argue for mutually exclusive interpretations, Paragraph 13 of the Protective Order largely accords with Rule 26(b)(5)(B). Both the Protective Order and the Rule contemplate that a court will determine the manner in which inadvertently-produced documents must be handled. *Compare* Protective Order ¶ 13 (upon notice, party must return and destroy the documents "*unless* otherwise ordered by the Court"), *with* Rule 26(b)(5)(B) (after notice, party "must promptly return, sequester, *or* destroy" the information, and "may promptly present the information to the court under seal for a determination of the claim") (emphasis added). The issue here is not that Plaintiffs were required

---

that this same document is protected by attorney-client privilege under Colorado law," ECF No. 72-1 at 5, but Plaintiffs believe the Denver District Court Judge wrongly decided that point. *Id.* at 3.

[5] "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved." Fed. R. Civ. P. 26(b)(5)(B).

to *destroy* the Guidelines before a court resolved the disputed privilege question. The Protective Order explicitly provides a caveat to a destruction demand: the party "promptly shall return to the producing person or entity and destroy any copies of the inadvertently or erroneously produced documents or information, *unless otherwise ordered by the Court*." Protective Order ¶ 13. At bottom, the Protective Order does not clearly mandate destruction before the entry of a court order resolving a dispute about the inadvertent disclosure of privileged information. The court thus finds that Plaintiffs' "sequestering" of the Guidelines, pending a court order on the matter, *see* ECF No. 74 at 15, complies with the Protective Order—even though KMOG might have preferred a full-on destruction of those materials.

However, Plaintiffs clearly did not "refrain from using" the Guidelines before a court order authorized such use, as demonstrated by the substantive reference to the Guidelines in Plaintiffs' response to the Motion to Dismiss. Protective Order ¶ 13 (directing that "the Party receiving such notice *shall refrain from using* said document or information in any manner or form" until the privilege question is resolved) (emphasis added). In so doing, Plaintiffs violated Paragraph 13 of the Protective Order.

### 3. The Destruction/Certification Requirement in the Protective Order

Finally, KMOG argues that Plaintiff violated the Protective Order by failing to comply with Paragraph 18 at the conclusion of *Boulter 1*:

> **Conclusion of Litigation.** Upon the request of a Covered Party following the final disposition of the Litigation, including all appeals therefrom, or the final disposition of the Litigation against any one or more of the Parties, the remaining Covered Parties, including their Experts, shall either destroy all Confidential Information and certify to the requesting Covered Party such destruction, or return to the requesting Covered Party all Confidential Information. Notwithstanding the foregoing, counsel for each Covered Party may retain a complete record of this

12

> Litigation, irrespective of whether a Covered Party's Confidential Information is included in the correspondence, pleadings, discovery, notes, research, or other files maintained by the attorney for purposes of representing his/her client in the Litigation.

Protective Order ¶ 18; *see also* ECF No. 79 at 4 (arguing that Plaintiffs "refuse to comply with this provision" and therefore have "violated the Protective Order").

Plaintiffs do not dispute that they have not complied with the destruction or certification requirements in Paragraph 18. As the court has previously noted, it finds untenable the proposition that the provision has not been triggered because *Boulter I* has not reached its "final disposition"—thus conferring on Plaintiffs "a right to retain" the confidential information produced in *Boulter I*. *See* ECF No. 74 at 9. Plaintiffs refusal to comply with Paragraph 18 constitutes a violation of the Protective Order.

### C. Relief

Having found that Plaintiffs' conduct violated Paragraphs 6, 13, and 18 of the Protective Order, the court is left to determine the appropriate sanction for these violations.

Under Federal Rule of Civil Procedure 37(b)(2), the court has authority to impose sanctions for violating a court order, including a stipulated protective order. "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992); *see also Kaufman*, 602 F.3d at 1093 (court's decision regarding discovery sanctions is reviewed under the deferential abuse of discretion standard, which recognizes that "a district court is in the best position to define the scope of the discovery orders and attendant protective orders it issues"). "[T]he Tenth Circuit has recognized that discovery sanctions must be in the interests of justice

and proportional to the specific violation of the Rules." *Connell Solera, LLC v. Lubrizol Advanced Materials, Inc.*, No. 21-cv-00336-NYW-SKC, 2023 WL 2187481, at *8 (D. Colo. Feb. 23, 2023) (citing *Olcott v. Del. Flood Co.*, 76 F.3d 1538, 1557 (10th Cir. 1996)).

Having carefully considered the parties' arguments and the entire record, the court finds that, while Plaintiffs' conduct with regard to compliance with the Protective Order may warrant no praise, neither has KMOG suffered significant prejudice here. No consequential aspect of the Guidelines has been publicly disclosed at this juncture. Nevertheless, the court recognizes its obligation to enforce the terms of protective orders and their "vital function of securing the just, speedy, and inexpensive determination of civil disputes[.]" *Merrill Scott*, 600 F.3d at 1272 (cleaned up). The court does not take lightly the requirements of the Protective Order, and neither should Plaintiffs be permitted to discount their importance.

Accordingly, the court respectfully **ORDERS** as follows:

(1) Plaintiffs shall not use, in *Boulter VI* or any other litigation, any documents designated by KMOG as Confidential Information in *Boulter I*, unless Plaintiffs have obtained those documents pursuant to discovery requests in other litigation.

(2) Plaintiffs shall immediately either destroy all Confidential Information they obtained in *Boulter I*, and certify to KMOG such destruction, or return to KMOG all such Confidential Information, **except for** the Guidelines, which are the subject of the pending In Camera Motion before Judge Crews, and the copy of such information counsel is allowed to retain pursuant to Paragraph 18 of the Protective Order.

If Judge Crews determines that the Guidelines are in fact privileged, the parties in this case shall treat them in accordance with Judge Crews's order in *Boulter VI* and may seek a

higher level restriction on access to the Guidelines in this case, as delineated below.

### III.     Motion to Restrict

In the Motion to Restrict, ECF No. 78, Plaintiffs request that the court maintain a Level 1 restriction on access for the Guidelines, ECF Nos. 75 and 75-1, and the related requests for production and a letter from counsel disseminating the documents. ECF Nos. 75-2 and 75-3.

The court grants the motion and respectfully rejects KMOG's request to elevate the restriction on access to Level 3, which limits access to the court, at this time. To be sure, KMOG clawed back the Guidelines, and the privilege claim has not yet been resolved. But as Plaintiffs note, there is an impractical, form-over-substance aspect to the proposed Level 3 restriction because both sides have possession of the restricted documents; indeed, Plaintiffs themselves filed the documents here. *See* ECF Nos. 75 to 75-3. Most compellingly, Plaintiffs point out that Judge Crews will decide the privilege question in conducting an analysis of the In Camera Motion in *Boulter VI*. *See* ECF No. 81 at 3. This court declines to prejudge the outcome of that privilege question by changing the restriction level on the Guidelines now.

After the *Boulter VI* court determines the privilege question, the parties may submit a motion to this court to change the restriction. Until then, a Level 1 restriction on access remains appropriate.

### IV.     Conclusion

Consistent with the foregoing, it is hereby respectfully **ORDERED**:

Defendant Kerr-McGee Oil & Gas Onshore, LP's Motion to Enforce Protective Order, ECF No. 72, is **granted**.

Plaintiffs' Motion for Leave to File Exhibits 1, 2, 3 and 4 Attached to their Response in

Opposition to Defendant's Motion to Enforce Protective order as Level 1 Restricted Documents, ECF No. 78, is **granted**. ECF Nos. 75, 75-1, 75-2, and 75-3 shall remain restricted at **Level 1**.[6]

DATED: March 28, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").